Filed 11/8/24  P. v. Chavez CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051088 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. 17CR006462) |
| v. | |
| JAIRO ISAIAH CHAVEZ, | |
| Defendant and Appellant. | |

Defendant Jairo Isaiah Chavez appeals from an order denying his petition for resentencing under Penal Code section 1172.6.[1]  For the reasons explained here, we will reverse the order.

## I.  TRIAL COURT PROCEEDINGS

### A. PLEA PROCEEDINGS

Defendant was charged in 2018 with assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)) and active participation in a criminal street gang (§ 186.22, subd. (a)) for his role in an attack on a fellow inmate at the Monterey County jail.  The information alleged defendant committed the assault for the benefit of a criminal street gang.  (§ 186.22, subd. (b)(1).)  It also alleged defendant had suffered four

---

[1]  In 2022 the Legislature renumbered Penal Code section 1170.95 to Penal Code section 1172.6 without substantive change to the text.  (Stats. 2022, ch. 58, § 10, eff. June 30, 2022.)  Although defendant's 2023 petition incorrectly references former Penal Code section 1170.95, we refer to the current statute for clarity.  Unspecified statutory references are to the Penal Code.

prior strike convictions (§ 1170.12, subd. (c)(1)) and served one prior prison term (§ 667.5, subd. (b)).

An amended information filed in 2019 charged defendant with attempted murder. (§§ 187, 664.)  The amended information alleged defendant "did willfully and unlawfully, and with malice aforethought attempt to murder" the victim.  It also alleged defendant committed the offense for the benefit of a criminal street gang and had suffered one prior strike conviction.

On the same day the amended information was filed, defendant pleaded no contest to attempted murder as part of a negotiated disposition.  Defendant also admitted the gang and prior strike allegations.  In exchange, defendant received a stipulated sentence of eight years in prison.

### B.  RESENTENCING PROCEEDINGS

Defendant petitioned for resentencing in 2023.  Using a preprinted form, defendant declared in his petition that a "complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine."  He further declared that he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The prosecution filed a response to defendant's petition, which included the following paragraph:  "The People's position is that the Petitioner was prosecuted as a direct aider and abettor operating with intent to kill, and thus remains guilty under the amended section[s] 188 and 189, [but] the People at this time concede that the record of conviction is insufficient to deny the Petitioner an evidentiary hearing.  Therefore, the People request that the Court issue an order to show cause and set an evidentiary hearing

in this matter." The trial court issued an order to show cause and conducted an evidentiary hearing on defendant's petition.

At the hearing, a sheriff's deputy testified to his observation of the assault, and jail video of the assault was played for the court. According to the deputy, the assault took place in a jail unit housing Norteño gang members and associates. It began during a "socialization period" when several inmates were allowed out of their cells; defendant was not one of them. Two inmates, one of whom appeared to be holding something, followed the victim up a stairway and attacked him. Defendant came out of his cell and joined the fight, punching the victim repeatedly for approximately 12 seconds. Defendant then returned to his cell. The victim went back downstairs, where he was again attacked by a group of three other inmates. He suffered lacerations and puncture wounds on his face, head, and back.

A detective testified "as an expert in the investigation of gang-related crimes, specifically the Norteno criminal street gang within Monterey County." He said the housing unit where the assault took place "consisted of sophisticated Norteno gang members, gang members that were facing violent charges." It was a "lockdown pod" where only a certain number of inmates were allowed out of their cells at once. Norteños would occasionally conduct a "removal" wherein "somebody is removed from their housing area by means of force." Removals are "supposed to be done violently" and are sometimes carried out "by death." They could be planned and approved in advance or done spontaneously.

According to the detective, Norteños would act as a team to execute a planned removal. One person (known as a " 'blanket' ") would monitor the intended victim and others (known as " 'hitters' " or " 'bombers' ") would carry out the assault when an opportunity arose, sometimes using weapons. Based on his review of the jail video, the detective believed the video depicted a planned removal in which defendant participated as a hitter or bomber. Defendant appeared to have jammed the lock on his cell door so he

3

could open it to participate in the assault. The detective believed a weapon had been used by someone during the assault. The nature of the victim's injuries suggested to the detective that the attackers had targeted his vital areas, as Norteños are often trained to do.

During defense counsel's cross-examination of the detective, the trial court made the following factual findings: "That the gentleman second following him up the stairs removed something that was hidden by a towel, threw the towel down. Went into the room where the victim was, and proceeded to use first five and then additional stabbing motions toward the victim. The fight came out, meaning the victim came out of the cell. That same gentleman continued his attack with stabbing motions. [¶] Your client came out of his cell and then started punching the victim simultaneously while he was being stabbed. [¶] Ultimately, the victim pulled away, and as you said, was gently nudged or directed toward the stairs, if you would, and ran down the stairs not so gently." The court did not find that defendant "used a weapon or engaged in stabbing motions at all."

Based on the evidence adduced at the hearing, defense counsel argued that defendant's conduct would constitute assault under current law and could only have been prosecuted as attempted murder under a natural and probable consequences theory. The trial court denied defendant's petition and made oral remarks in support of its ruling: "So I have watched the video, listened to the testimony. The defendant was in a Norteno unit. This was a coordinated and planned attack. [¶] … Petitioner was a direct aider and abettor who shared the intent of the perpetrator, specifically an intent to kill."

## II. DISCUSSION

Defendant challenges the trial court's finding that he was guilty of attempted murder under current law, arguing there is insufficient evidence to support the finding. The Attorney General contends substantial evidence supports the trial court's finding. We conclude the record does not contain sufficient evidence of defendant's intent to kill and we will therefore reverse the trial court's denial of the resentencing petition.

## A. LEGAL BACKGROUND

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 2), which amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[] the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) That change in law resulted in three amendments to the Penal Code, effective January 1, 2019. First, section 188, subdivision (a)(3) was added so that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Second, section 189, subdivision (e) was added to limit liability for felony murder. (Stats. 2018, ch. 1015, § 3.) Third, Senate Bill No. 1437 added former section 1170.95, "which create[d] a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis*, at p. 957.) Specifically, "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition … to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" under certain conditions. (Former § 1170.95, subd. (a) (Stats. 2018, ch. 1015, § 4).)

In 2021, the Legislature enacted Senate Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), which amended former section 1170.95, effective January 1, 2022. The amended statute extended resentencing relief to defendants convicted of "attempted murder under the natural and probable consequences doctrine, or manslaughter" in addition to those convicted of murder. (Former § 1170.95, subd. (a) (Stats. 2021, ch. 551, § 2).) Senate Bill No. 775 made no amendments to sections 188 and 189.

## B. DEFENDANT'S ELIGIBILITY FOR RELIEF UNDER SECTION 1172.6

Section 1172.6, subdivision (a) allows a defendant convicted of attempted murder to petition for resentencing if, among other requirements, a "complaint, information, or

indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of … attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)(1)) and the defendant "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)).  An order to show cause must issue if a petitioner makes a prima facie case for relief.  (§ 1172.6, subd. (c).)  Although at the prima facie stage, the trial court must accept a petition's factual allegations as true and determine whether the petitioner would be entitled to relief if those factual allegations were proved, if the record of conviction contains facts refuting the allegations in the petition, the court may deny the petition.  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

Although here the prosecution conceded that the petition stated a prima facie case for relief, the Attorney General initially contended on appeal that the record of conviction contains facts refuting defendant's allegation that he was prosecuted for attempted murder under a natural and probable consequences theory.  Specifically, the Attorney General noted defendant was not charged with attempted murder until 2019—after Senate Bill No. 1437 had taken effect and eliminated natural and probable consequences liability for murder.  Defendant countered in his reply brief that he was prosecuted for attempted murder well before the passage of Senate Bill No. 775—which clarified "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories."  (Stats. 2021, ch. 551, § 1.)  Defendant also argued the prosecution forfeited the issue by conceding at the outset that his petition could not be denied at the prima facie stage.

It is clear that defendant was prosecuted for attempted murder after Senate Bill No. 1437 eliminated natural and probable consequences liability for murder, and before Senate Bill No. 775 expressly provided resentencing relief to those convicted of attempted murder under the natural and probable consequences doctrine.  Less clear from

the parties' initial briefing was the state of the law, at the time of defendant's plea, concerning the continued viability of the natural and probable consequences doctrine in new or ongoing prosecutions for attempted murder. (See *People v. Sanchez* (2022) 75 Cal.App.5th 191, 193.) We invited supplemental briefing on that issue, and the Attorney General filed a brief withdrawing the argument that defendant is ineligible for relief under section 1172.6 because he was already charged with and convicted of attempted murder under current law. We accept the withdrawal of that argument.

## C. SUFFICIENCY OF THE EVIDENCE

In an evidentiary hearing under section 1172.6, the prosecution must prove beyond a reasonable doubt that the defendant is guilty of murder or attempted murder under current law. (§ 1172.6, subd. (d)(3).) A trial court's denial of a section 1172.6 petition following an evidentiary hearing is reviewed for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) Under that standard, we "must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "We must presume in support of the judgment the existence of every fact that the trier of fact could reasonably deduce from the evidence." (*People v. Medina* (2009) 46 Cal.4th 913, 919.)

The trial court found defendant was guilty of attempted murder as a direct aider and abettor who shared the direct perpetrator's intent to kill. Despite the Legislature's elimination of attempted murder under a natural and probable consequences theory, direct aiding and abetting remains a valid theory of liability. (*People v. Coley* (2022) 77 Cal.App.5th 539, 548.) That theory requires that a defendant, "acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*People v.*

7

*Beeman* (1984) 35 Cal.3d 547, 561.) "Thus, to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill." (*People v. Lee* (2003) 31 Cal.4th 613, 624.)

Relying on the prosecution's initial 2018 charging decision as well as testimony that removals rarely result in death and that no weapon was found, defendant first argues there is insufficient evidence an attempted murder took place at all. We agree that the evidence of weapon use is equivocal. A gang expert opined that a weapon was used, but acknowledged on cross-examination that he was not sure, and no weapon was found or visible on the jail video. According to the testimony, the victim's injuries (most of which were lacerations rather than puncture wounds) could have been caused by something other than a weapon. It is thus unclear from the record that any weapon which may have been used was a deadly one. Although the prosecution's initial choice to charge participants in the attack with assault rather than attempted murder does not necessarily mean that no attempted murder occurred, that choice is consistent with the lack of strong evidence that any of the assailants intended to kill the victim. (Indeed, the other participants were ultimately convicted of assault and not attempted murder.)

Even assuming an attempted murder occurred, we agree with defendant that the evidence is insufficient to establish he knew of and shared the direct perpetrator's intent to kill. We acknowledge that gang evidence was presented to provide context for the conduct shown in the jail video, on which defendant is seen leaving his cell while the direct perpetrator attacked the victim, and punching the victim repeatedly while the attack continued. A reasonable trier of fact could infer from the jail video and the gang expert's testimony that the coordinated attack was planned in advance, and that defendant jammed the lock on his cell door specifically in order to participate in it. But the evidence does

not establish that the plan was to commit *murder* or that defendant intended to aid in a killing. There was no evidence of a specific agreement to kill the victim, or even that a planned removal of a fellow Norteño would be understood by the participants as likely to result in death. (Cf. *People v. Nguyen* (2015) 61 Cal.4th 1015, 1054–1055 [intent to kill could be inferred where members of two rival gangs "would drive around 'hunting for their rivals' " while the gangs "were in a state of war, and members of both gangs were expected to be able to engage in gunfights with their rivals 'at a moment's notice' "].) To the contrary, the gang expert testified that the jail had not "had anybody die recently" despite removals taking place "maybe once every couple months." On this record, defendant's intent to participate in a removal does not adequately show he shared an intent to kill.

"A reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence." (*People v. Rekte* (2015) 232 Cal.App.4th 1237, 1247.) Because substantial evidence does not support the trial court's finding that defendant intended to kill and thus directly aided and abetted an attempted murder, we must reverse the order denying defendant's resentencing petition.

### III.    DISPOSITION

The order is reversed.

9

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Lie, J.

H051088
*The People v. Chavez*